503 S.E.2d 826

STATE of West Virginia ex rel. the COUNTY COMMISSION OF McDOWELL COUNTY, WEST VIRGINIA, Petitioner,

v.

The Honorable Kendrick KING, Chief Judge of Circuit Court of McDowell County, West Virginia, Respondent.

No. 24480.

Supreme Court of Appeals of West Virginia.

Submitted March 24, 1998.

Decided June 12, 1998.

---

Sidney H. Bell, Welch, for Petitioner.

Ancil G. Ramey, Steptoe & Johnson, Charleston, for Respondent.

. STARCHER, Justice:

## I.

### Facts and Background

This is a writ of prohibition filed by the County Commission of McDowell County, West Virginia. The respondent is the Honorable Kendrick King, Chief Judge of the Circuit Court of McDowell County.

The petitioner asks that this Court restrain the respondent from committing alleged "gross abuses of power and usurpation of the executive and legislative powers of the petitioner." The particular acts of the respondent of which the petitioner complains arise out of the decision by the respondent to order the relocation of the magistrate court and family law master offices ("lower court facilities") in McDowell County.

Specifically, on June 2, 1997, the respondent entered an administrative order entitled "Intent to Move Magistrate Judicial Facilities," finding that the lower court facilities in McDowell County were "inadequate and insufficient and should be moved to a better, more sufficient and more adequate location with all reasonable dispatch as soon as practicable."[1]

---

**1.** The order reads in pertinent part:

Pursuant to the authority vested in the undersigned Chief Judge of the 8th Judicial Circuit in and for McDowell County, West Virginia, by the Constitution and laws of the State of West Virginia, particularly Section 50–1–11 of the West Virginia Code, and by the rules, practices, policies, procedures, standards and guidelines of the West Virginia Supreme Court of Appeals, the Chief Judge hereby finds that the McDowell County Magistrate Court facilities as currently existing are inadequate and insufficient and should be moved to a better, more sufficient and more adequate location with all reasonable dispatch as soon as practicable.

It is, thereupon, ORDERED that all Magistrate Court facilities in McDowell County, to-wit, the 8th Judicial Circuit, shall be moved to a location or locations prescribed by the Chief Judge at the earliest practicable time.

The Clerk shall send attested copies of this Order to Chief Justice Margaret L. Workman, Ted Philyaw, Administrative Director of the Courts, Circuit Judge Booker T. Stephens, McDowell County Magistrates Martin B. West, Ronnie B. McKenzie and Pete J. Beavers, McDowell County Commissioners Gordon Lambert, Mike Cortellessi and Carl Urps, McDowell County Clerk H.C. "Kit" Lewis, Jr., and McDowell County Prosecuting Attorney Sidney Bell.

On June 12, 1997, the petitioner, by the local prosecuting attorney, wrote a letter to the administrative director of this Court in response to the respondent's June 2, 1997 order. This letter expressed the petitioner's

2. This letter reads in pertinent part:

The McDowell County Commission asked me as its statutory counsel to notify you that the Commission takes exception to the findings in Judge King's *ex parte* administrative orders that the judicial facilities provided for the family law master and magistrate court of McDowell County are inadequate. The County Commission objects to any relocation of these facilities.

As you are aware, the County Commission purchased the Magistrate Court Building in 1981 specifically for the magistrate court. In addition to the purchase price, the County Commission spent many thousands of dollars to renovate the building to make it appropriate for judicial facilities.

The location is ideal with the Courthouse Annex and Courthouse literally just across the street from the Magistrate Court Building, the county jail a two-minute walk away, and all of the lawyers' offices in Welch within easy walking distance. Unlike the Courthouse and Courthouse Annex, the building has an elevator to make it accessible to persons with disabilities.

The current location of the family law master facilities is also ideal with the waiting area and hearing room on the ground floor of the Courthouse, directly under the Circuit Clerk's office and just across the street from the law master's private law office. The Commission is not aware of any complaints that the family law master facilities are not as good as any other similar county's law master offices.

The County Commission is ready, willing and able to respond to any reasonable suggestions of improvements to the Magistrate Court Building. In recent years the Commission has responded promptly and effectively to maintenance and improvement needs, such as installation of new air conditioning units.

The statutory right of the chief judge to choose the location of the magistrate courts, subject to the state Supreme Court's administrative rules, was exercised many years ago. The County Commission takes the position that the statute should not be interpreted to hold that the Court, *sua sponte*, can decide in an *ex parte* administrative order to relocate centrally located facilities without any formal proceedings to show inadequacy of the current offices.

Finally, the County Commission is concerned about the appearance of retaliation against it over the ongoing magistrate court staff parking controversy. After many years of adequate service, why is there an immediate need to relocate the facilities without giving the Commission an opportunity to address any specific claims of inadequacy?

reasons for objecting to moving the lower court facilities to a new location.[2]

Subsequently, on September 22, 1997, the respondent entered a second administrative order.[3] That order finds that the lower court

Just a few years ago, our County Commission was barely able to meet the county payroll from one month to the next. Even now, our county employees have no health insurance benefits. Now that the County Commission has been able to catch up on its bills, meet its payroll regularly and end the fiscal year without a deficit, this attempt to take away the rent it receives for judicial facilities and impose a possibly heavier burden for renting from a private landlord is viewed by the Commission as unfair and irresponsible.

Thank you for considering the position of the County Commission in regard to its duty to provide the facilities for these courts.

3. This order reads in pertinent part:

Pursuant to the authority vested in the undersigned Chief Circuit Judge of the 8th Judicial Circuit in and for McDowell County, West Virginia, by the Constitution and laws of the State of West Virginia, particularly Section 50–1–11 of the West Virginia Code, and by the rules, practices, policies, procedures, standards and guidelines of the West Virginia Supreme Court of Appeals and in follow-up to the June 2, 1997 Administrative Order entitled "Intent to Move Magistrate Judicial Facilities", the Chief Judge hereby finds that the 8th Circuit Magistrate Court should be moved as soon as practicable to better, more sufficient and more adequate facilities and location on the second floor of the "new bed tower addition" of the old Stevens Clinic Hospital building in Welch, West Virginia, now known as the "Cardinal Inn and Professional Building", and that the attached Lease Agreement, entitled "McDowell County Magistrate Court Lease Agreement", between McDowell Automotive & Supply, Inc., a corporation, as Lessor, and The County Commission of McDowell County, a statutory public corporation, as Lessee, dated September 19, 1997, is the proper and appropriate instrument with fair, proper and reasonable terms and conditions to accomplish the foregoing in a reliable, responsible manner.

It is, thereupon, ADJUDGED and ORDERED that the attached "McDowell County Magistrate Court Lease Agreement" is hereby approved, endorsed and authorized by the Chief Judge for the Magistrate Court of McDowell County, West Virginia, and The County Commission of McDowell County is hereby authorized and directed to make, enter into and duly sign and acknowledge the Lease Agreement by its proper officer, to-wit, its President, at the earliest practicable time.

It is further ORDERED that the Chief Judge will retain the triplicate originals of the Lease

facilities "should be moved as soon as practicable to better, more sufficient and more adequate facilities" at the "Cardinal Inn & Professional Building" ("the new location").

The order required the petitioner to execute a lease with the owner of the new location. An attached letter outlined the respondent's reasons for selecting the new location.[4]

Agreement and will bring same, or cause same to be brought, to The County Commission for approval, signing and acknowledgment by its President at the day, time and place designated by The County Commission for such purpose.

It is further ORDERED that the Clerk of this Court shall forthwith transmit certified copies of this Order, with the Chief Judge's attached September 22, 1997 cover letter and an attested copy of the Lease Agreement, to McDowell County Commissioners Gordon Lambert, Michael Cortellessi and Carl Urps, McDowell County Clerk H.C. "Kit" Lewis, Jr., McDowell County Prosecuting Attorney Sidney Bell, Ted Philyaw, Administrative Director of the Courts, Circuit Judge Booker T. Stephens, McDowell County Magistrates Martin B. West, Ronnie B. McKenzie and Pete J. Beavers, Jr., McDowell County Magistrate Court Clerk Nina P. Church, and McDowell County Administrator B.G. Smith, and receipt of same is deemed sufficient notice of the contents of this order.

4. This letter reads in pertinent part:

The Circuit Court is finalizing the moving of the Magistrate Court to the old Stevens Clinic Hospital building.

The Lease Agreement approved, endorsed and authorized by me as Chief Circuit Judge has a target move-in date of mid-November. The Magistrate Court would share the rented portion of the second floor of the "new bed tower addition" with the Family Law Master Court. The rent would be $2,200.00 per month or $26,400.00 per July 1–June 30 Fiscal Year. The Lessor would be responsible for all upkeep, maintenance, janitorial services, parking, ADA compliance, heating, air-conditioning, elevator service, snow removal, and the like.

I consider this Lease Agreement to be very fair and favorable to the improved function of our Magistrate Court in McDowell County. I find the move is necessary and in the long-term will best serve the people of this County and result in long-term financial savings to the County. For example, with regard to the present Family Law Master Court and Magistrate Court security requirements as presented to The County Commission in the strictly confidential "Security Audit Report" of the West Virginia Supreme Court of Appeals, dated July 24, 1996 and done by Danny Fulknier, Deputy Court Marshal of the Supreme Court, with a September 26, 1996 cover letter from Ted Philyaw, Administrative Director of Courts, it would probably cost our County several hundred thousand dollars to bring the present Family Law Master Court and Magistrate Court facilities into Court Security compliance if that could be done and, just as important, there is strong reason to believe that such

compliance might be impossible to obtain even after spending large sums of money due to the age and time-worn condition of the present facilities.

The Lease Agreement is affordable through the "Magistrate Court Fund" and budget provided for in Section 50-3-4 of the West Virginia Code. As you know, the Magistrate Court Fund is funded exclusively by Court Costs imposed upon certain litigants in the Magistrate Court and it has nothing whatsoever to do with real estate or personal property taxes.

For the 1994–95 Fiscal Year, the Magistrate Court Fund actually received almost $28,000.00 ($27,930.01). For the 1995–96 Fiscal Year, the Fund took in over $24,000.00 ($24,261.34). For this past 1996–97 Fiscal Year, the Fund took in over $26,000.00 ($26,223.41 plus interest). It is reasonably foreseeable that in this 1997–98 Fiscal Year, the Fund will take in over $27,000.00 and in the next few Fiscal Years will continue to take in between $27,000.00 and $30,000.00 per year. It, therefore, appears that there will be no significant funding problems for the Magistrate Court under the Lease Agreement. Of course, if the Magistrate Court does move to the new facility this coming November, then the 1997–98 Fiscal Year rent would be $19,980.00 for that eight-months period, which is easily affordable.

I think it is important to note that the above figures relate to the Magistrate Court Fund *all by itself*. The Magistrate Court of McDowell County imposes and collects large amounts of money that work to the benefit of our County in a myriad of other ways. For example, in the year 1996 the McDowell County Magistrate Court imposed and paid over $92,463.00 in fines that went over to the local School Fund; $13,477.00 in fees for process and subpoenas that went over to the Sheriff's Department; $5,164.00 in arrest fees that went over to the Sheriff's Department; $33,620.00 in home confinement fees that went over to the Sheriff's Department; $16,056.97 in worthless check charges that were remitted to victims of worthless checks; $1,396.50 in fees remitted to the Circuit Clerk; $200.00 in fees remitted to the State Division of Natural Resources; $79,736.99 that went over to the State Treasurer for other Court costs in special funds such as the CVC Fund, LET Fund, RJA Civil Fund, RJA Criminal Fund, LC Fund and Court Security Fund; with another $98,480.60 cleared out through bonds, post-judgment proceedings and the like.

Just as important, you should be aware that since its creation beginning July 1, 1997[sic] to the present, the McDowell County Magistrate Court Fund *all by itself* has paid over to the County of McDowell at least $630,789.90 for

The petitioner met with the respondent on October 6, 1997, but refused to comply with the second administrative order.

On October 7, 1997 the respondent entered a third administrative order, reiterating the earlier requirement that the petitioner enter

> monies in this special restricted-use County fund required to be used fully and exclusively for the operation, use and benefit of the Magistrate Court of McDowell County. See, for example, my June 10, 1997 Administrative Order entitled "Magistrate Court Fund Expenditures".
>
> Please make, enter into and duly sign and acknowledge this Lease Agreement at the earliest practicable time and please put this item on your agenda for your next scheduled meeting on Wednesday, September 24, 1997.

5. This order reads in pertinent part:

> On October 6, 1997 the undersigned Chief Circuit Judge met with Gordon Lambert, G. Michael Cortellessi and Carl Urps, County Commissioners of McDowell County, West Virginia, and Sidney Bell, McDowell County Prosecuting Attorney, to discuss the Lease Agreements for the McDowell County Magistrate Court and Family Law Master Court as approved and authorized in this Court's September 22, 1997 Administrative Order. The administrative hearing was held in due form with appropriate questions, answers, comments and remarks by all the aforesaid.
>
> Whereupon, from the foregoing administrative hearing and the totality of the facts and circumstances of this administrative matter, the Court makes the following findings of fact and conclusions of law:
>
> By June 2, 1997 Administrative Order the Chief Circuit Judge duly informed the County Commission of McDowell County of intent to move the Magistrate and Family Law Master Courts and that the existing Judicial Facilities for those Courts were inadequate and unsuitable.
>
> By September 22, 1997 Administrative Order of Chief Circuit Judge accepted and approved the Lease Agreements and authorized and directed the County Commission to make, enter into and duly sign and acknowledge them at the earliest practicable time.
>
> Since then, the County Commission has met and failed to take action on the Lease Agreements and disseminated to the general public that it does not or will not sign them. The Court takes Judicial Notice of such public dissemination.
>
> By September 26, 1997 Administrative Order this administrative hearing was set.
>
> Due to the Leases' target move-in date being November 15, 1997 or as soon thereafter as practicable and because the Leases run on a Fiscal Year (July 1 thru next June 30) basis with the Court and Commission already being

into a lease for the new location, and setting a show cause hearing for October 14, 1997 for the county commissioners to appear and show cause why they should not be held in civil contempt for their failure to obey the circuit court's administrative orders.[5]

> in the fourth month of the 1997–98 Fiscal Year, time is of critical essence in this matter.
>
> The applicable statutes and laws of the State of West Virginia clearly and unambiguously give the full and exclusive power, authority, duty and responsibility to the Chief Circuit Judge of the 8th Judicial Circuit (McDowell County) to determine the location, sufficiency and suitability of the Magistrate Court and Family Law Master Court Judicial Facilities for the 8th Judicial Circuit. This determination involves basically an ordinary matter of ordinary Court business; certainly, nothing extraordinary is involved in this matter.
>
> The existing Magistrate Court and Family Law Master Court Judicial Facilities are not suitable and sufficient for the administration of justice and the conduct of orderly judicial proceedings in a proper setting and manner. The new locations and facilities are suitable and sufficient.
>
> The relocation and the Lease Agreements are necessary, proper and appropriate for the administration of justice and the conduct of orderly judicial proceedings in a proper setting and manner.
>
> The County Commission did not indicate any willingness or make any offer to do as the Court authorized and directed concerning the Lease Agreements. In fact, its inclination seems to be to the contrary and no spirit of cooperation was shown to the satisfaction of the Court. Therefore, upon the Lease Agreement issue, there is a substantial, genuine and irreconcilable disagreement, problem or administrative conflict between the Chief Circuit Judge and the County Commission and, based upon the law in *State ex rel. Frazier v. Meadows*, 193 W.Va. 20, 454 S.E.2d 65 (1994), and other law in such cases made and provided, only the Chief Circuit Judge can determine whether the Lease Agreements and the relocation are reasonable, necessary and appropriate.
>
> In fact, it is reasonable, necessary and appropriate under the totality of the facts and circumstances of this matter that the Magistrate Court and Family Law Master Court Judicial Facilities be relocated for the proper administration of justice and to conduct appropriate and orderly Magistrate Court and Family Law Master Court proceedings in a proper setting in due fashion and the Lease Agreements are the best and most appropriate and feasible way of accomplishing such proper relocation.
>
> \*    \*    \*
>
> It is, thereupon, ADJUDGED and ORDERED that the relocation and moving of the

The petitioner filed the instant petition for a writ of prohibition on October 9, 1997. We accepted the petition and further proceedings before the circuit court were stayed.

After briefing and oral argument, we concluded that the issues presented in the petition involved not only this Court's exercise of its original jurisdiction in considering the request for a writ of prohibition challenging the circuit court's actions, but also involved this Court's exercise of its administrative powers and authority. Consequently this Court directed by administrative order that the administrative director of this Court, Mr. Ted Philyaw, conduct an investigation and make a report with recommendations to this Court regarding the matters raised in the prohibition proceedings. That report was submitted to this Court on May 1, 1998.[6]

8th Judicial Circuit (McDowell County) Magistrate Court and Family Law Master Court Judicial Facilities must be done at the earliest practicable time; time is of critical essence in this matter; and the County Commission of McDowell County, West Virginia, CAN, MUST and SHALL make, enter into and duly sign and acknowledge the Lease Agreements for the Magistrate Court and Family Law Master Court relocation at a regular or specially called meeting not later than 3:00 p.m., Tuesday, October 14, 1997.

\* \* \*

It is also ORDERED that if the County Commission has not taken the necessary action on the Lease Agreements by 3:00 p.m., October 14, 1997, then County Commissioners Gordon Lambert, G. Michael Cortellessi and Carl Urps shall appear before Chief Circuit Judge Kendrick King in his Courtroom at the McDowell County Courthouse Annex, Welch, West Virginia, at 4:15 p.m. on Tuesday, October 14, 1997 to show cause, if any they can, why they should not be held in Civil Contempt of this Court Order for their wilful failure, refusal or neglect to take the necessary actions on the Magistrate Court and Family Law Master Court Lease Agreements.

6. Mr. Philyaw's report states in pertinent part:

In 1978 [sic], when the Magistrate Court was established in West Virginia, the Chief Judge of McDowell County determined to establish four satellite offices in the county under the provisions of West Virginia Code, 50–1–11, to provide judicial services to the different geographic areas of the county. The offices were located in Ieager, War, Kyle, and Welch. As a result of the logistical problems and the cost of maintaining four separate offices, the Chief Judge and the County Commission later decided to consolidate all magistrate offices in one building located in Welch, the county seat of McDowell County.

In 1983, in order to accomplish this consolidation, the county commission purchased a building adjacent to the courthouse annex and directly across the street from the main courthouse and county jail. The building was remodeled to accommodate four magistrates and a magistrate court clerk. (Note: In 1991 McDowell County lost a magistrate position.) The county had access to the magistrate court fund to help defray the cost of the purchase, renovation, and operating costs of the new building. Under the provisions of West Virginia Code, 50–3–4, the county commission is entitled to a maximum of $12,500 per magistrate to assist with the funding of magistrate facilities. Expenditures from the magistrate fund are governed by the provisions of Rule 8 of the Administrative Rules for Magistrate Courts. (See Tab 1.)

A second issue relates to the facilities for the family law master. In 1986 the Legislature established the Family Law Master system in West Virginia to provide an expedited system for establishing child support and paternity. Under the provisions of West Virginia Code, 48A–4–21, the county commission is required to provide office space for the family law masters which conforms to standards established by the Supreme Court. The Administrative Office of the Courts shall pay to the county commission a reasonable amount as rent for the premises occupied.

In 1993 the Legislature amended the statute to provide that the Supreme Court can promulgate standards for the office space occupied by the family law master. This represented an effort to assure that family law masters had adequate facilities to hold hearings and process domestic cases. (See Tab 2.)

At some point in 1997, though the exact date is not clear, the Chief Judge for the 8th Judicial Circuit became concerned with the adequacy of the space occupied by the magistrate court and the family law master. The Judge proceeded to explore options for moving both of these courts, and after an exhaustive search settled on the Stevens Clinic building located approximately seven-tenths of a mile from the courthouse. The Chief Judge developed a lease for new facilities and presented it to the county commission to be executed. The county commission refused, and filed a petition with the Supreme Court to prohibit the Chief Judge from moving the magistrate court and family law master.

FINANCIAL ISSUES

The McDowell County Commission cited financial concerns in opposing the move of the magistrate court and family law master from county owned facilities to leased facilities. The Magistrate Court Fund in McDowell County has generated approximately $26,000 each fiscal year for the past five years. In addition,

the county receives $2,700 from the State for the space occupied by the family law master for a total of $28,700. From this revenue the county is required to pay the utilities, telephone, and janitorial services for the magistrate court. The state pays the telephone costs for the family law master in addition to the rent paid to the county commission.

The average utility and telephone costs for the magistrates' home phone numbers total $2,300 per year. The county commission cannot determine the actual phone costs for the magistrate court since the phone service is billed on a master account for county government. A rough estimate for the phone charges for the magistrate court would be $5,000 per year. This leaves approximately $21,000 for the county to use to maintain the building, and if building maintenance is not required, the funds can be converted to the general operating account of the county and used for the general support of county government. If the Judge moves the judicial facilities to private space, the county will lose the revenue from the magistrate fund and the rent the State pays the county for the family law master.

*JUDICIAL FACILITIES*

The threshold issue in this matter is whether the current judicial facilities are adequate, and if the facilities are inadequate, whether it is cost effective to bring the facilities up to a minimum standard. In an effort to obtain an independent review of the facilities, the firm of Sillings Associates, Inc. was contacted to arrange a site visit to review the space occupied by the magistrates and the family law master. On April 14, 1998, Mr. Tom R. Wooldridge of Sillings Associates, Inc., Mr. Chuck McBrayer of Clingenpeel/McBrayer and Associates, and the Administrative Director visited the facilities in Welch. The report filed with the Administrative Director is under Tab 3.

It is the recommendation of the professionals who examined the buildings that:

... both the Magistrate Court and Law Master's offices represent a fire hazard and are in need of major renovation, and I believe it would be cost prohibitive to bring these spaces into compliance with [the building] Code. It is my recommendation that the Magistrate Court and the Law Master's office be relocated as soon as possible.

There is no question that the judicial facilities in McDowell County need to be renovated. The key question was whether it is cost effective to spend money on the existing facilities. That question has now been answered.

One of the major contributing factors to the current condition of the facilities is the failure of the county commission to adequately maintain the building over the past few years. The county has taken the money generated by the magistrate court fund (paid as rent to the county) and converted it to the county general fund instead of using the money for maintenance of the magistrate facility. Everyone realizes that McDowell County has experienced severe budget problems over the last decade,

but the fact remains that the magistrate fund was designed for support of court facilities, and the failure to use the funds for that purpose has resulted in the current problem of unsafe facilities for the judicial employees and the citizens seeking access to the courts.

The county commission is entitled to charge the fund $6.00 per square foot for providing the facility. However, this does not mean the county can charge the magistrate fund $6.00 for rent, convert this to the county general fund and then fail to spend adequate money to maintain the building.

*THE PROCESS*

The process used by the Chief Judge and the county commission to deal with the facility issues in McDowell County was problematic. Before a chief judge orders the magistrate court to be moved from county-owned facilities, there should be clear findings with regard to the inadequacies of the existing building. The judge should conduct a systematic review of the facilities with clear findings of any deficiencies. Second, these deficiencies/problems should be presented to the county commission for review with an opportunity to present a corrective plan to the court. Third, the chief judge should then determine if the corrective plan is adequate. If it is adequate, the county commission should proceed with the improvements. If the plan is inadequate, then the chief judge should make written findings stating the objections to the plan and proposing a judicial plan for either improving the existing facilities or finding a new location for the magistrate court.

West Virginia Code, 50-1-11, clearly gives the chief judge the authority to select the location for the magistrate court facilities. However, if the county commission purchases a building or makes space available in a county owned building for the magistrates, then there is a compelling financial interest for county government in maintaining the magistrate court in county-owned facilities. Therefore, the chief judge should be required to clearly document deficiencies with the existing facilities and give the county commission an opportunity to respond before ordering relocation of the magistrate court. In addition, there is a practice in multi-judge circuits of rotating the chief judge position, and if the chief judge and the county commission agree to put the magistrate court in a county-owned facility, this decision should not be subject to review every time a new chief judge takes over.

The case of *State ex rel. Lambert v. Stephens*, 200 W.Va. 802, 490 S.E.2d 891 (1997), holds that courts have inherent authority to require necessary resources, such as sufficient funds for operating expenses, work space, parking space, supplies, and other material items. However, the Supreme Court cautioned that in order for a court to invoke use of its inherent power to require resources, the court must demonstrate that such resources are reason-

## II.

### *Standard of Review*

■ " ' "[T]his Court will use prohibition ... to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance." Syllabus Point 1, [in part,] *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979).' Syllabus point 1, in part, *State ex rel. DeFrances v. Bedell,* 191 W.Va. 513, 446 S.E.2d 906 (1994)." Syllabus Point 1, *State ex rel. Charleston Mail Ass'n v. Ranson,* 200 W.Va. 5, 488 S.E.2d 5 (1997).

While the overwhelming weight of evidence before this Court supports the conclusion that the existing lower court facilities in

McDowell County are inadequate and should be changed as soon as possible, because this is a prohibition proceeding, this opinion will focus on matters of law, and not on facts that are technically in dispute.

## III.

### *Discussion*

### A.

### *Prohibition and Standing*

The respondent makes two threshold arguments in opposition to the petitioner's request for a writ of prohibition. First, the respondent argues that a writ of prohibition is an improper method to challenge the circuit court's administrative orders and related proceedings. Second, the respondent argues that the petitioner county commission lacks standing to challenge threatened contempt

ably necessary for performance of its responsibilities in the administration of justice.

In the instant case, the Chief Judge did not clearly document the problems with the existing facilities and did not establish a procedure to obtain an adequate response from the county commission. The current situation was that the Chief Judge said the building was inadequate and the county commission contended that they would spend whatever it would take to bring the building up to standards. At no time was a proper study done to determine the cost effectiveness of remodeling the existing facility and then comparing that cost to the cost of leased property. Decisions of this type should clearly be business decisions, and the process to reach that decision should be well documented so that if the matter has to be reviewed there will be an adequate record. Unfortunately, in this instance the Supreme Court was not provided with adequate information to make an informed decision regarding the location of the courts in McDowell County.

*CONCLUSION*

Pursuant to the findings and recommendations of the professionals who examined the facilities in McDowell County, the Chief Judge should immediately find a new location for the magistrate court and the family law master. Because of the financial problems facing the McDowell County Commission, the cost of obtaining new space should, to the extent possible, not exceed the revenue generated by the magistrate court fund and the resources available from the State for payment of the space occupied by the family law master.

This conclusion is based on the report of the architect, and given the status of this particular case, the process outlined above does not need

to be followed at this point for two reasons. First, the issues raised by the architect clearly point out a safety problem. Second, this case has been pending for some time and needs to be moved to a conclusion. In addition, the professionals have concluded that repair of the building is not cost-effective.

*RECOMMENDATIONS*

Controversies over judicial facilities are becoming more common in West Virginia. In order for these to be settled in an effective manner, the following recommendations are offered for consideration by the Supreme Court:

● Rule 8 of the Administrative Rules for Magistrate Court should be amended to provide a procedure for the location and relocation of magistrate court. These amendments should clearly set forth a procedure to be followed when the chief judge feels it is necessary to relocate the magistrates from a county-owned facility.

● Rule 8 should be amended to allow the chief judge to monitor the expenditure of the magistrate court fund and, if in the opinion of the chief judge the county is not adequately maintaining the magistrate facility, to direct the expenditure of the funds to assure adequate maintenance.

● Standards should be adopted by the Supreme Court for all court facilities similar to those adopted for the family law masters. Tab 4 contains the first standards issued by the Administrative Office in 1978. The plans for new construction, renovations, or new facilities should be submitted to the Administrative Office for review.

\*     \*     \*

proceedings against the individual commissioners.

We decline to address the merits of these arguments. We assume *arguendo* and for purposes of our decision in the instant case only that a writ of prohibition is an acceptable method to challenge the respondent's administrative orders and related proceedings; and that the petitioner has standing to bring such a challenge.

## B.

### *Judicial Authority in Selection of Lower Court Facilities*

We turn to the substantive merits of the petitioner's challenge to the circuit court's actions in this case. The petitioner contends that the circuit court does not have the authority to order the petitioners to move the magistrate court and family law master offices.

### 1.

### *Magistrate Court*

The circuit court grounded its actions with respect to ordering the move of the magistrate court offices in *W.Va.Code,* 50–1–11 [1980], that states in pertinent part:

7. In *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988), we described in Syllabus Points 1 and 2 the scope of our rule-making authority with respect to the administration of our state's judicial system:
   1. Under article eight, section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law.
   2. "Under Article VIII, Section 8 [and Section 3] of the Constitution of West Virginia (commonly known as the Judicial Reorganization Amendment), administrative rules promulgated by the Supreme Court of Appeals of West Virginia have the force and effect of statutory law and operate to supersede any law that is in conflict with them." Syl. Pt. 1, *Stern Brothers, Inc. v. McClure,* 160 W.Va. 567, 236 S.E.2d 222 (1977).

8. This overall authority for this Court with respect to the magistrate court system is, *inter alia,* established in article VIII, section 6 of the *West Virginia Constitution,* which states in pertinent part:

Subject to the rules of the supreme court of appeals, the location of offices for magistrates shall be determined by order of the judge of the circuit court, or the chief judge thereof if there is more than one judge of the circuit court.

The respondent points to this statutory language as clearly supporting the respondent's authority to move the magistrate court from its current quarters. The petitioner does not present any substantial argument why this language does not mean what it says, in stating that the determination of the location of magistrate court offices shall be made by an order of the circuit judge.

■ We cannot quarrel with the circuit judge's reliance upon this clear statutory language in support of the judge's issuance of the administrative orders that are challenged in the instant case. However, the statutory language that assigns this role to the circuit judge is directly modified by the phrase "[s]ubject to the rules [7] of the supreme court of appeals." *Id.* Therefore, *W.Va.Code,* 50–1–11 [1980] must also be read as recognizing the constitutional principle that the final and overall authority over the magistrate court system, including the location of magistrate court offices, lies not with the circuit judge but with the supreme court of appeals.[8]

Subject to the supervisory control of the supreme court of appeals, each circuit court shall have general supervisory control over all magistrate courts in the circuit. Under the direction of the chief justice of the supreme court of appeals, the judge of the circuit court, or the chief judge thereof if there be more than one judge of the circuit court, shall be the administrative head of the circuit court and all magistrate courts in the circuit.

(Emphasis added).

Such authority is consistent with and a part of the overall administrative authority over lower courts that is granted to this Court by our *Constitution.* In *State ex rel. Bagley v. Blankenship,* 161 W.Va. 630, 644–649, 246 S.E.2d 99, 107–109 (1978) *(per curiam),* we stated:

The Judicial Reorganization Amendment, Article VIII, Section 3, of the Constitution, placed heavy responsibilities on this Court for administration of the state's entire court system. The mandate of the people, so expressed, commands the members of the Court to be alert to

## 2.

### *Family Law Master*

As to the location of facilities for the family law masters, *W.Va.Code*, 48A–4–21 [1993], states:

Each county commission of this state has a duty to provide premises for the family law master which are adequate for the conduct of the duties required of such master under the provisions of this chapter and which conform to standards established by rules promulgated by the supreme court of appeals. The administrative office of the supreme court of appeals shall pay to the county commission a reasonable amount as rent for the premises furnished by the county commission to the family law master and his or her staff pursuant to the provisions of this section.

The foregoing statutory language recognizes this Court's authority to set standards for offices for family law masters that the county commission provides and for which this Court pays rent. This Court adopted standards for family law master facilities by an administrative order dated April 19, 1994. However, this order is silent as to procedures for the approval of such facilities, including their location. Historically, questions that have arisen about the location of county-provided family law master offices have been informally resolved by the administrative director of this Court, in consultation with concerned parties.

█ It is not clear from the briefs in the instant case whether the petitioner challenges the overall authority of this Court to approve or disapprove of a proposed location for or to order the relocation of family law master offices. To the extent that such authority is disputed, we believe that under *W.Va.Code*, 48A–4–21 [1993], the constitutional provisions noted at note 8, *supra*, and this court's holding in *State ex rel. Lambert v. Stephens*, 200 W.Va. 802, 490 S.E.2d 891 (1997) discussing the inherent authority of

courts, this Court has the overall final authority to approve or disapprove of the location of family law master offices, and to require the relocation of family law master offices that are not "adequate for the conduct [of judicial business] required of such master." *W.Va.Code*, 48A–4–21 [1993].

## 3.

### *Future Procedures*

The respondent judge acknowledges that he is not assigned a specific statutory or constitutional role in the process of locating family law master offices. We have concluded that, as with the magistrate court offices, overall authority regarding family law master office location ultimately lies with this Court, although our rules have not as yet established a specific procedure for the exercise of that authority. We believe that in the exercise of our administrative authority in this area we can and should establish a role for the circuit court in the process of locating family law master offices because of the unique local perspective that the circuit court brings to the issue of the location of lower court facilities, and because of the circuit court's unique and knowledgeable daily interaction with these lower courts.

█ Thus, in summary, we hold that *W.Va.Code*, 50–1–11 [1980] and *W.Va.Code*, 48A–4–21 [1993] recognize that the overall constitutional authority to determine and approve of the location of magistrate court and family law master offices lies with the West Virginia Supreme Court of Appeals. The primary responsibility for recommending a location for such offices to the supreme court lies with the judge, or chief judge in a circuit with more than one judge, of the circuit court for the county in which the offices are located, in consultation with the county commission and under the guidance of principles and procedures established by the supreme court. In responding to recommendations from the circuit court, the supreme court of appeals

the needs and requirements of the court system throughout the state.

\* \* \*

Justices of the peace and the fee system were phased out and a completely new program of

magistrates with clerical help, facilities and equipment was provided. The office of administrative director was created by the amendment for managerial services for the state's entire judicial system.

will show deference to the circuit court's experience and knowledge of local conditions. Upon the approval and direction of the supreme court, the circuit court shall authorize such location by administrative order.

Turning to the instant case, it is apparent from the detailed report of this Court's administrative director, *see* note 6 *supra*, that the circuit court had more than adequate grounds for instituting action to evaluate and, if necessary, to effectuate a location change for the magistrate and law master offices for McDowell County.

It is also apparent that the circuit court, while laudably acting to promote and protect the welfare of the lower courts, their employees and officers and the public, had no guidance or direction from this Court as to proper procedures for taking such action— because we had not spoken directly on this issue, either by rule or prior decision.

It is this guidance that we must now give in addressing the request for a writ of prohibition in the instant case. At the same time, we indicate that we intend to give similar guidance and direction by administrative rules to be issued in the future.

▪ After a review of the record of the proceedings before the circuit court and the report of the administrative director of this Court, we hold that the preferred location for magistrate court and family law master offices is a county-owned building, assuming that the building is otherwise safe, convenient, affordable and meets applicable standards. If suitable space for such offices in a county-owned building cannot be arranged, then preference should be given to other public or quasi-public buildings—such as municipal buildings or senior citizen centers. If a public or quasi-public building location cannot be arranged, privately owned buildings may be used. However, before there is a change of location from a public or quasi-public building to a private building, it must be established that the current offices are unsafe, inadequate, or otherwise fail to meet appropriate standards, and that the owner of

the public or quasi-public building currently in use cannot make the building meet standards at a reasonable cost.

▪ We further hold that once a magistrate court or family law master office location has been established in a county, if a judge, or chief judge in a circuit with more than one judge, believes that the location of the office should be changed, the judge must, prior to taking any action to implement such a change, consult with and provide a statement of reasons for the proposed change to the administrative director of the supreme court of appeals. Additionally, if major rehabilitation or major renovation of existing magistrate court or family law master offices is planned by the owner of the offices, the judge or chief judge shall, prior to the commencement of any such rehabilitation or renovation, obtain and submit plans for such rehabilitation or renovation to the administrative director of the supreme court of appeals.

▪ Upon receipt of information from a judge or chief judge regarding any such proposed change of location, rehabilitation, or renovation, the administrative director shall consult with the judge or chief judge and take such other actions as are necessary to assure that adequate financial and other relevant information regarding the proposed change, rehabilitation or renovation is developed, so that there can be a meaningful review of the proposal by the supreme court of appeals. No change in office location or major office renovation or rehabilitation of magistrate court or family law master offices shall be ordered, permitted or authorized by the circuit court without the prior approval of the supreme court of appeals. A circuit court is empowered to conduct such proceedings as are necessary to implement these procedures, and the county commission and other potentially affected persons shall be afforded the opportunity to participate in such proceedings to represent their interests and express their positions.[9]

Finally, we briefly address the respondent's contention that the petitioner has

---

9. The principles and procedures that are outlined herein as guidance for a circuit court, as applied to the facts of the instant case, yield results that are substantially in accord with the observations and suggestions in the Administrative Director's report at note 6 *supra*.

spent much of the money which has been paid to the petitioner from the magistrate court fund established in *W.Va.Code*, 50–3–4 (1994) as compensation for magistrate court office space for purposes other than properly maintaining the county-owned building where the offices are located.[10]

The respondent contends that the unsuitable conditions of the county-owned building presently being used for magistrate court and family law master offices in McDowell County are at least in part due to the petitioner's failure to use this money for upkeep, maintenance and improvements. *See* September 22, 1997 letter to petitioner from respondent, note 4, *supra; see also* Report of Administrative Director, note 6, *supra.*

■■■ To avoid such circumstances, we conclude based upon the foregoing reasoning that public funds expended to pay for magis-

---

10. *W.Va.Code*, 50–1–11 [1980] states, in part, that "[a]ll expenses of acquiring or renting offices and utility and telephone expenses [for magistrate courts] shall be paid by the county." We stated in *State ex rel. Lambert v. Stephens*, 200 W.Va. 802, 812, 490 S.E.2d 891, 901 (1997):

> The magistrate court fund exists pursuant to West Virginia Code § 50–3–4 (1994) and consists of "all costs collected in magistrate courts in a civil or criminal proceeding...." W.Va. Code § 50–3–4. The statute further provides "[a] county may, *in accordance with the supervisory rules of the supreme court of appeals,* appropriate and spend from such fund such sums as shall be necessary to defray the expenses of providing services to magistrate courts...." (Emphasis in original).

This Court's *Administrative Rules for the Magistrate Courts of West Virginia,* Rule 8 [1992] governs the payment of funds to the county commission to defray the county's provision of services for the magistrate courts. Rule 8 states:

> Expenditures from magistrate court fund.
>
> A county may appropriate and spend from the magistrate court fund such sums as may be available for providing the following services:
>
> (a) Bailiff for magistrate court.—The county may charge the fund $35.00 per day for each day a bailiff is needed in magistrate court, and the sheriff may charge the fund $.15 per mile for transporting prisoners from magistrate court to the county or regional jail. Sums for bailiff services and mileage may properly be charged only after a voucher for the same has been submitted to, and approved by, the chief judge or his designee.
>
> (b) Magistrate court office rental.—(1) Privately owned facilities.—The county may charge the fund the actual rental expenses incurred in obtaining office space for the magistrates and their support staff.
>
> (2) County owned facilities.—(A) Rate.—The county may charge the fund an annual rate of $6.00 per square foot, payable in monthly installments, which will include the cost of utilities and the monthly base telephone rate.
>
> (B) Improvements to heating and air-conditioning.—If the magistrate court system is housed in county-owned buildings and the heating and air-conditioning systems in the space allocated to the magistrate court system are not adequate, the supervising circuit judge may direct the county commission to improve

or replace the systems, and may charge the costs, on a pro rata basis, to the fund.

> (c) Utilities and telephone service in magistrate offices.—(1) General.—The county may charge the fund the actual cost for providing utilities and telephone service for the magistrate court system.
>
> (2) Long-distance and paging expense.—All long-distance calls made on behalf of the magistrate court system may be charged to the fund and are not included in the $6.00 per square foot rental cost. The cost of paging system for magistrates is considered an extension of the long-distance telephone service, and the cost of the system may be charged to the fund.
>
> (d) Telephone service in magistrates' homes.—The base monthly telephone bill for telephones in the homes of magistrates is a reimbursable expense to the magistrate, paid by the county and chargeable to the magistrate court fund. The base monthly rate shall include only the cost to lease a basic service telephone on a single private line.
>
> Reimbursement may be made for the base monthly charge only, and magistrates may not be reimbursed for long-distance charges, extension telephones, or other ancillary services. Magistrates may be reimbursed only upon completion of a "Certification of Entitlement" stating the telephone number of such personal telephone and affirming that it is a listed number available to the general public. Such "Certification of Entitlement" shall be filed with the Administrative Director of the Supreme Court of Appeals, who shall provide the certification with the signed approval of the Administrative Director to the county commission of each magistrate's county.
>
> (e) Janitorial services.—The cost of providing janitorial services and cleaning supplies in either a county-owned or leased building may be charged to the fund.
>
> (f) Parking.—If parking for the magistrate court staff and the public is otherwise unavailable, then the cost of providing adequate parking spaces for the public and the staff of the magistrate court may be charged to the fund.
>
> (g) Exceptions.—Whenever unique circumstances justify exceptions to any provision of this rule, such exceptions may be made in writing by the Administrative Director to any county commission.

trate court and family master facilities must as a priority be spent to ensure that the facilities continue to meet applicable standards; and that this Court, in cooperation with the circuit court, has the responsibility and overall authority to see that this requirement is accomplished.

Therefore, we hold that a judge or chief judge in a circuit with more than one judge, in consultation with the administrative director of the supreme court of appeals, is empowered to make inquiries and conduct proceedings to assure that funds expended from the magistrate court fund or by this Court for magistrate court and family law master offices are as a priority expended by the recipient of the funds to ensure that the offices are appropriately maintained and kept up to applicable standards.

## IV.

### Conclusion

Based upon the foregoing principles and reasoning, we find that the circuit court's actions that are challenged in the instant request for a writ of prohibition have clearly set a valuable and necessary process in motion. However, the procedures used by the circuit court in arriving at the challenged administrative orders, upon which the challenged contempt proceedings are based, did not comply in full with the requirements established in this opinion. Therefore, we grant the writ of prohibition as moulded and require that the circuit court's administrative orders be vacated and the contempt proceedings based thereon be dismissed.

With a procedural and substantive framework now established by this opinion, we believe that the respondent and the petitioner in consultation with the administrative director of this Court may move quickly to address the issue of the location of the family law master and magistrate offices in McDowell County. As the report of the administrative director strongly indicates, this should be done as soon as possible.

Writ Granted as Moulded.